UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVA LEE,

                        Plaintiff,

        -against-                              07 CIV 6475 (JSR)

NYP HOLDING INC. and
RAYMOND WALSH JR.,

                        Defendants.

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii-iv

PRELIMINARY STATEMENT ............................................................................. 1

SUMMARY OF UNDISPUTED MATERIAL FACTS ........................................... 3

I.  Employment At The Post's Pressroom ................................................... 3

    A.  Employees And Priority Of Work Assignment In The Post
        Pressroom ...................................................................................... 3

    B.  Plaintiff's Employment In The Post Pressroom ............................... 5

II.  Employment In The Post Mailroom .......................................................... 6

    A.  Employees And Priority Of Work Assignment In The Post
        Mailroom ...................................................................................... 6

    B.  Plaintiff's Employment In The Post Mailroom .............................. 7

III.  Plaintiff Altercations With Several Co-Workers, Which The Post Properly
     Investigated ............................................................................................ 7

IV.  The Post's Policy Against Workplace Discrimination, Harassment and
     Retaliation .............................................................................................. 8

ARGUMENT AND ANALYSIS ............................................................................ 8

I.  Plaintiff's Claims of Discrimination in the Post Pressroom Are Time
    Barred ...................................................................................................... 9

II.  Plaintiff's Gender Discrimination Claims Fail As A Matter Of Law ........... 10

    A.  Plaintiff Cannot Establish A Prima Facie Case of Gender
        Discrimination In The Post Pressroom ......................................... 11

        1.  Plaintiff's Allegation That She Was Not Hired On October
            6, 2004 Fails To State A Cognizable Claim Of Gender
            Discrimination ...................................................................... 11

        2.  Plaintiff's Claim That She Was Discriminated Against In
            Her Placement On The Casual List Is Insufficient As A
            Matter Of Law ..................................................................... 13

        3.  Plaintiff Cannot Show That Work Assignment Procedures
            In The Pressroom Were Carried Out in a Discriminatory
            Manner ............................................................................... 15

        4.  Plaintiff's Claim Regarding Her April 2005 "Vacation" is
            Baseless .............................................................................. 16

    B.  Plaintiff Cannot Establish A Prima Facie Case of Gender
        Discrimination In Assignment Of Work In The Post Mailroom ............. 16

1.     Plaintiff Patently Fails To Produce Any Evidence Indicating She Was Discriminated Against By Being Assigned To The "Stack Down" ................................................... 17

2.     Plaintiff's Claim That Suspended Employees Received Work Before Her In The Mailroom Is Bizarre And Untrue ........ 18

C.     Plaintiff's Claim Of Discrimination By Post Security Also Lacks Merit ................................................................................................. 18

D.     Plaintiff's Claim Regarding Transfer Of Her Mailers' Card Fails On Its Face ...................................................................................... 19

III.     Plaintiff Cannot Establish That She Suffered Actionable Sexual Harassment ................................................................................................. 19

A.     Plaintiff Fails To Establish A Prima Facie Case Because She Does Not Allege That Any Harassment Was On Account Of Her Sex ........... 20

B.     Plaintiff's Alleged Harassment Was Not Sufficiently Severe Or Pervasive To Create An Actionable Hostile Work Environment ........... 21

C.     Plaintiff Cannot Impute Her Co-Worker's Conduct To The Post ........... 22

IV.     Plaintiff's Retaliation Claim Also Fails As A Matter Of Law ............................ 23

A.     Plaintiff's Claim Of Not Being Hired Before Other Workers In The Mailroom Could Not Be The Result Of Retaliation By The Post ........... 23

B.     Vincent's Letter Cannot Be The Basis Of A Retaliation Claim Because It Does Not Constitute A Materially Adverse Action ............... 24

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alfano v. Costello*, 294 F.3d 365, 373-74, 378, 380 (2d Cir. 2002) ...................................19, 21, 22

*Allen v. Advanced Digital Information Corp.*, 500 F. Supp. 2d 93, 104 (N.D.N.Y. 2007) ...........22

*Bampoe v. Coach Stores, Inc.*, 93 F. Supp. 2d 360, 374 (S.D.N.Y. 2000) ....................................22

*Baptiste v. Cushman & Wakefield*, No. 03 Civ. 2102(RCC), 2007 WL 747796, at *9, 11
     (S.D.N.Y. Mar. 7, 2007) ...............................................................................................22, 25

*Benson v. North Shore-Long Island Jewish Health Systems*, 482 F. Supp. 2d 320, 329-30
     (E.D.N.Y. 2007)...................................................................................................................9

*Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2414-15, 2415-
     17 (2006) ................................................................................................................23, 24, 25

*Cameron v. Community Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) .............8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)..............................................................8, 9

*Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001).......................................25

*David v. Children's Village*, 132 Fed. Appx. 872, 873-74 (2d Cir. 2005)....................................14

*Delena v. Verizon New York Inc.*, No. 02-CV-0372C(F), 2007 WL 2973583, at *7
     (W.D.N.Y. Oct. 10, 2007)....................................................................................................9

*Drummond v. IPC International, Inc.*, 400 F. Supp. 2d 521, 528 (E.D.N.Y. 2005)...............21, 22

*Figueroa v. City of New York*, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002) ..................................15

*Figueroa v. City of New York*, No. 00 CIV. 7559(SAS), 2002 WL 31163880, at *3
     (S.D.N.Y. Sept. 27, 2002)...................................................................................................13

*Fosen v. New York Times*, No. 03-CV-3785 (KMK) 2006 WL 2927611, at *9 (S.D.N.Y.
     Oct. 11, 2006) ....................................................................................................................23

*Frasca v. United States*, 921 F.2d 450, 452-53 (2d Cir. 1990).......................................................1

*Ganthier v. North Shore-Long Island Jewish Health System, Inc.*, 345 F. Supp. 2d 271,
     280 (E.D.N.Y. 2004).........................................................................................................16

*Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 358 (S.D.N.Y. 2006).......................................13

*Joiner v. Chartwells and Compass Group North America*, 500 F. Supp. 2d 75, 84 n.9 (D. Conn. 2007)..................................................................................................................25

*Jordan v. Olsten Corp.*, 111 F. Supp. 2d 227, 236 (W.D.N.Y. 2000) ..........................................14

*Ledbetter v. Goodyear*, 127 S. Ct. 2162, 2165, 2175 (2007)..........................................................9

*Loucar v. Boston Market Corp.*, 294 F. Supp. 2d 472, 477 (S.D.N.Y. 2003) ...............................9

*Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)...................................................12

*Matsushita Electric Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)................8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...........................................................10

*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).....................................................21

*Moore v. Consolidated Edison Company of New York, Inc.*, No. 00 Civ. 7384 (PAC), 2007 WL 831807, at *6 (S.D.N.Y. Mar. 20, 2007) ..........................................................25

*Muhammad v. New York City Transit Authority*, 450 F. Supp. 2d 198, 203-04 (E.D.N.Y. 2006) ...........................................................................................................................20, 21

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)..............................…............20

*Pearson v. Board of Education*, 499 F. Supp. 2d 575, 597 (S.D.N.Y. 2007)................................13

*Plant v. Deutsche Bank Securities, Inc.*, No. 07 Civ. 3498(AKH), 2007 WL 2187109, at *4 (S.D.N.Y. July 23, 2007) ......................................................................................9

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 153 (2000)...................................10

*Riscilli v. Gibson Guitar Corp.*, No. 06 Civ. 7596(RJH), 2007 WL 2005555, at *3 (S.D.N.Y. July 10, 2007) ....................................................................................................22

*Robinson v. American Stock Exchange*, No. 04 Civ. 5899(PAC), 2007 WL 3084970, at *5 (S.D.N.Y. Oct. 22, 2007) ................................................................................................23

*Sanders v. New York City Human Resources Administration*, 361 F.3d 749, 755-56 (2d Cir. 2004) .............................................................................................................................10

*Scott v. Cellco Partnership*, No. Civ. 7245 (LMM), 2007 WL 1051687, at *2 (S.D.N.Y. Apr. 3, 2007)...............................................................................................................24, 25

*Seils v. Rochester City School District*, 192 F. Supp. 2d 100, 110 (W.D.N.Y. 2002)..................11

*Shah v. Consolidated Edison Corp. of New York*, 175 Fed. Appx. 436, 437-38 (2d Cir. 2006) ................................................................................................................24

*Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) ......................9

*Weinstock v. Columbia University*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) .........................10

*Wells-Williams v. Kingsboro Psychiatric Center*, No. 03-CV-134(CBA), 2007 WL 1011545, at *3 (E.D.N.Y. Mar. 30, 2007) ................................................10, 11

*Wright v. Goldman Sachs & Co.*, 387 F. Supp. 2d 314, 327-28 (S.D.N.Y. 2005) ........15

## FEDERAL STATUTES

42 U.S.C. § 2000e. ...........................................................................................................2, 9

Federal Rules of Civil Procedure Rule 4(m)......................................................................1

Federal Rules of Civil Procedure Rule 56 ......................................................................1, 8

## STATE STATUTES

New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ...............2, 10

New York State Human Rights Law § 297 ...............................................................2, 10, 23

Defendant NYP Holdings, Inc., incorrectly named as "NYP Holding Inc." (hereinafter the "Post" or "Company"), by and through its undersigned counsel,[1] and pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits this Memorandum of Law in support of its Motion for Summary Judgment.

## PRELIMINARY STATEMENT

Plaintiff Eva Siu-San Lee ("Plaintiff"), a member of the New York Mailers' Union Number Six (the "Mailers' Union"), is a New York Times (the "Times") employee who also works from time to time at either the Pressroom or Mailroom in the Post's printing and distribution facility in the Bronx ("Bronx Facility"). In a classic case of a plaintiff throwing a heap of vacuous mud against the wall in the hope that at least some might stick, Plaintiff provides a myriad of unsubstantiated contentions, unfounded speculation and imaginative assertions in an attempt to convince this Court that she is the victim of gender discrimination, gender harassment and retaliation by the Post. She is not.

Quite to the contrary, the evidence establishes that Plaintiff received _preferential_ treatment at the Post, having been given the _unique_ opportunity to work in the Post Pressroom and earn shifts towards membership in the New York Newspaper Printing Pressmen's Union Number 2 (the "Pressmen's Union"), despite the fact that she was already a member of a newspaper industry union, the Mailers' Union. Undeniably, Plaintiff can point to no other employee, male or female, who is a member of the Mailers' Union (or any other newspaper industry union) and who simultaneously works in the Post Pressroom – this is simply because there are none.

Instead, Plaintiff unreasonably tries to argue that every and any action occurring at the Post constituted _per se_ discrimination against her. Specifically, Plaintiff falsely alleges she suffered:

---

[1] Counsel to the Post does not represent and has not appeared in this suit on behalf of Raymond Walsh, Jr. Walsh has not been served with the Complaint within the requisite 120-day period of Plaintiff's filing her Complaint with the Court (Walsh Aff. ¶ 4); accordingly, Plaintiff's claims against Walsh as an individual defendant are subject to dismissal pursuant to Federal Rules of Civil Procedure Rule 4(m). Frasca v. U.S., 921 F.2d 450, 452-53 (2d Cir. 1990).

(1) gender discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law § 297 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL") by:

    (a)    not being hired on October 6, 2004 in the Post Pressroom;

    (b)    after being allowed the special privilege of working in the Pressroom, being placed last on the Pressroom Casual List;

    (c)    not being assigned work in the Post Pressroom on March 9, 2005;

    (d)    not being allowed to sign-in for work in the Post Pressroom that she could not accept, during her "vacation" in April 2005;

    (e)    being assigned the "stack down" job in the Post Mailroom;

    (f)    receiving work after suspended employees in the Post Mailroom;

    (g)    not being allowed to transfer her Mailers' Union card from the Times to the Post;

    (h)    being asked by Post Security to wait for her work assignment in the Post Pressroom shape house, according to Post rules; and

    (i)    being escorted by Post Security when she did not have her identification.

(2) gender harassment under Title VII with respect to three isolated, gender-neutral incidents involving non-management co-workers; and

(3) retaliation under Title VII and the NYSHRL with respect to being called last for work during the Post Mailroom shape and receiving a letter from Post Senior V.P. of Operations, Joseph Vincent.

Plaintiff, however, has no evidence that any of the acts about which she complains occurred because of her gender (and/or if they occurred at all), or due to an effort by the Post to retaliate. And, in fact, she freely admits that she never was the victim of, or even the witness to, anyone at the Post saying anything derogatory or sexual about women. Indeed, the Post has articulated legitimate nondiscriminatory reasons for every action the Plaintiff argues was discriminatory or retaliatory, and Plaintiff has no evidence that such articulated reasons are pretexts for unlawful discrimination. Finally, Plaintiff concedes she was not harassed by any Post employee or manager on the basis of her gender.

To be sure, the admissible, material and relevant evidence shows that Plaintiff has not suffered *any* adverse treatment by the Post – she has not been fired, suspended, docked pay, demoted, harassed, denied any shifts that she was entitled to or mistreated in any other conceivable way. Plaintiff's claims otherwise are premised on unsubstantiated allegations, inadmissible speculation and hearsay, and her

misguided and false understanding of the Post's work assignment procedures and rules. Accordingly, the Post respectfully moves this Court for summary judgment on each of Plaintiff's claims.

## SUMMARY OF UNDISPUTED MATERIAL FACTS

Plaintiff has been working at the Bronx Facility in both the Post's Pressroom and Mailroom since May 2004.[2] (Pl. Dep. 32.) Plaintiff is the only member of the Mailers' Union working in the Post Pressroom. (Walsh Aff. ¶ 18.) She has been a member of the Mailers' Union since approximately 2001, and holds her union card with the Times. (Pl. Dep. 36-37.)

### I.    Employment At The Post's Pressroom

#### A.    Employees And Priority Of Work Assignment In The Post Pressroom

Non-management employees working in the Post Pressroom are (1) members of the Pressmen's Union ("Pressmen"), either Journeymen or Juniors, whose regular employment is with the Post, (2) outside Pressmen (Journeymen or Juniors) whose regular employment is with either the Times or the New York Daily News, or (3) non-union individuals (Casuals or Provisionals). (Walsh Aff. ¶ 5.) Generally speaking, the difference between Journeymen and Juniors is that Journeymen have been in the Pressmen's Union longer; under the Post's collective bargaining agreement ("CBA") with the Pressmen's Union, a certain number of Journeymen and Juniors are guaranteed work each shift. (Id.) The CBA governs the terms and conditions of work for the Journeymen and Juniors. (Id.)

---

[2] Reference to "Pl. Dep." refers to the Deposition of Plaintiff, reference to "Walsh Dep." refers to the Deposition of Raymond Walsh, Jr., reference to "Walsh Aff." refers to the Affidavit of Raymond Walsh, Jr., reference to "Sutherland Aff." refers to the Affidavit of Whitney Sutherland, reference to "Granito Aff." refers to the Affidavit of Michael Granito, reference to "Vazquez Aff." refers to the Affidavit of Lloyd Vazquez, and reference to "Scialdone Aff." refers to the Affidavit of Amy Scialdone. Excerpts from the transcripts of Plaintiff's and Walsh's depositions, and the afore-mentioned Affidavits with their exhibits, are attached as Exhibits 1-7 to the Declaration of Shari M. Goldsmith, Esq., in Support of Defendant's Motion of Summary Judgment, filed concurrently herewith.

The difference between Casuals and Provisionals is that Casuals have priority to work over Provisionals; a Provisional is the term used for anyone who literally could walk off the street and try to get work one night in the Pressroom. (Id. ¶ 6; Walsh Dep. 37.) Since Casuals like Plaintiff (and Provisionals) are *not* members of the Pressmen's Union, their terms and conditions for work are principally governed by rules established by the Post on its own. (Walsh Aff. ¶ 11.) As non-union employees, Casuals (or Provisionals) have no right or expectation to work on any particular shift, and are only hired when the Post does not have enough Journeymen or Juniors for a given shift. (Id. ¶ 6.)

The Post assigns work to Casuals based on their sequentially-numbered placement on a Casual List.[3] (Id. ¶ 7.) In order to actually receive work, Casuals are required to physically shape at least five nights a week, meaning they must actually show up at the Bronx Facility and sign-in as ready to work, and be available for the given work assignment. (Id. ¶ 9.) During the shape, Casuals are required to wait for their assignments, if any, in the shape house or outside the Bronx Facility. (Vazquez Aff. ¶ 7.)

The Post has established shape procedures that dictate, among other things, that assignment of work among Casuals is based on the order a Casual appears on the list, that Casuals are prohibited from refusing work for a shift in which they have signed-in or from signing-in for a shift which they know they cannot accept, and that Casuals require foreman approval of all excused absences. (Walsh Aff. ¶ 10-11.) Provisional employees become eligible to be placed on the Casual List after working in the Pressroom; they are then rated by foremen according to their aptitude and attitude on the job. (Id. ¶ 14.)

---

[3] Casuals may obtain membership into the Pressmen's Union by working a certain prescribed number of shifts within one of two six-month periods, either January 1st through June 30th, or July 1st through December 31st. It is undisputed that the Pressmen's Union alone dictates the number of shifts a non-union employee must work in one six-month period in order to qualify for union membership as a Junior. Effective January 1, 2007, the Pressmen's Union raised this number from 110 to 124. (Walsh Aff. ¶ 8.)

**B.**    **Plaintiff's Employment In The Post Pressroom**

Plaintiff began working in the Post Pressroom as a Provisional in May 2004. (Pl. Dep. 31.) At that time, Raymond Walsh, Jr. ("Walsh") was the Post's Pressroom Superintendent, and as such, he was in charge of the Pressroom. (Walsh Aff. ¶ 2.) For as long as Walsh had been in charge of the Post's Pressroom, he and the Post have had a practice that no one could shape or work in the Pressroom if that person already was a member of another newspaper industry union. (Id. ¶ 12.) In September 2004, Walsh discovered that Plaintiff was a member of another newspaper industry union, the Mailers' Union, and thus, she was in violation of that practice. (Id. ¶ 13.; Walsh Dep. 107-08; 144-45.) As such, on October 6, 2004, the next time Plaintiff attempted to sign-in for work as a Provisional in the Pressroom, Walsh informed her that she was not allowed to work in the Pressroom because she had a union card with another newspaper industry union, the Mailers' Union. (Walsh Aff. ¶ 13; Pl. Dep. 59.) Despite being told of this rule, Plaintiff brought her complaint to the attention of Wayne Mitchell ("Mitchell"), President of the Mailers' Union. Both Mitchell and Joseph Vincent ("Vincent"), the Post's Senior V.P. of Operations, reiterated to Plaintiff the policy against newspaper industry union members working in another union's shop. (Pl. Dep. 76-77.) On Plaintiff's behalf, Mitchell cut a deal with Vincent; Mitchell then reported to Plaintiff that Vincent agreed he would not enforce this rule, and would allow Plaintiff to continue shaping in the Pressroom. (Id. 77-79.) As of November 2004, Plaintiff resumed shaping and working in the Post Pressroom. (Walsh Aff. ¶ 13.)

Because Plaintiff was working in the Pressroom as a Provisional, she was considered, along with other Provisionals, for elevation to the 2005 Casual List. (Id. ¶ 14.) As was his practice, Walsh met with his top foremen to rate Provisionals for placement onto the Casual List. (Id.) Provisionals were rated on a scale of one to five, according to the previously established and used criteria of aptitude and attitude. (Id.) Consistent with Post practice, a foreman only rated a Provisional with whom he had enough personal experience. (Id.) During this process, Plaintiff was evaluated according to these

criteria only by Walsh because he was the only Pressroom supervisor having significant contact with her. (Id. ¶ 15.) Plaintiff received a rating of 2.5 for aptitude and 2 for attitude because Walsh believed her performance to be "fair" when compared to others; she showed an average interest and ability in learning and applying herself to new tasks, working the assignments she was given, and reporting for work on time. (Id.) By virtue of her total score of 4.5, Plaintiff was placed on the 2006 Casual List as number 11, below ten Provisionals who received higher ratings, ranging from 30 (number 1) to 22.5 (number 10). (Id.) There were four men who, after being rated, did not earn placement on the Casual List. (Id.) The Casual List has not been added to since Plaintiff was put on it. (Id. ¶ 16.)

## II.    Employment In The Post Mailroom

### A.    Employees And Priority Of Work Assignment In The Post Mailroom

Work is assigned in the Post Mailroom in accordance with the Mailers' Union CBA. (Sutherland Aff. ¶ 4.) Regular Situation Holders and Substitutes, who regularly work at the Post, have first priority in receiving work assignments, and therefore receive work assignments ahead of Outside Card Holders (like Plaintiff), whose Union membership is tied with another newspaper. (Id. ¶¶ 3-4)

Outside Card Holders are ultimately hired for a particular shift by Mailers' Union Chairman Nick Vazzano ("Chairman Vazzano"). (Granito Aff. ¶ 4.) They receive the remaining assignments by calling-in to the Post Mailroom during specified hours. (Id.) Mailroom foreman Mike Granito ("Granito") listens to the Outside Card Holders' messages and puts the names of the callers, in the order in which they called, on a list. This list is then given, along with the number of jobs available in the mailroom, to Chairman Vazzano (who is not a member of Post management), who then decides which employees will be hired for such jobs. (Granito Aff. ¶ 4; Sutherland Aff. ¶ 5; Pl. Dep. 250.)

Next, Mailroom Superintendent Whit Sutherland ("Sutherland"), Granito, or Mailroom foreman Michael Guzy will slot the employees into particular work assignments; however Chairman Vazzano has the authority to switch or change the assignments once a shift has started. (Sutherland Aff. ¶ 6.)

### B.    Plaintiff's Employment In The Post Mailroom

Plaintiff began working in the Post Mailroom in July 2002. (Pl. Dep. 33.) Because of her status as an Outside Card Holder at the Times, Plaintiff must shape in order to get hired for work in the Post Mailroom; she receives assignments only after Regular Situation Holders and Substitutes have been hired. (Sutherland Aff. ¶¶ 4-5, 11.) As such, Plaintiff, like other Outside Card Holders, works the lowest priority jobs of Feeder or Combi-stack – also called the "stack down," which during the dayside shift involves preparing the newspapers for being shrink wrapped and then delivered. (Id. ¶ 7; Granito Aff. ¶ 6.) Both men and women work the "stack down" (Pl. Dep. 42), and on any given shift, the number of men working the "stack down" is equal to, if not much greater than, the number of women so assigned. (Sutherland Aff. ¶ 8; Granito Aff. ¶ 9.) As well, of the shifts Plaintiff has worked in the Post Mailroom, her assignments have been split almost evenly between the Feeder and Combi-stack. (Sutherland Aff. ¶ 13.) And, on the occasions when Plaintiff has been assigned the "stack down," there have always been more men than women assigned to that job. (Id.)

### III.    Plaintiff Altercations With Several Co-Workers, Which The Post Properly Investigated

On December 21, 2006, Plaintiff told Director of Post Security Lloyd Vazquez ("Vazquez") of a disagreement between herself and co-worker John Hom, stemming from Hom's opinion that Plaintiff was disrespectful to his wife at a holiday party off Post premises. (Pl. Dep. 195-205; Vazquez Aff. ¶ 4, Ex. A.) The Post investigated the matter, determined that no disciplinary action for either Plaintiff or Hom was warranted (Vazquez Aff. ¶ 5.), and advised Plaintiff to call Vazquez if any other incidents occurred. (Pl. Dep. 214, 237.) There were no further incidents between Plaintiff and Hom. (Id. 216).

The next month, Plaintiff filed a report with the New York Police Department ("NYPD"), on January 9, 2007, and a report with Post Human Resources ("HR") Manager Penny Morgan ("Morgan"), on January 8, 2007, regarding an incident with co-worker John Magalia, which occurred away from work. (Id. 221, 238, Exs. 10, 13.) According to Plaintiff, Magalia approached Plaintiff, requested to

spend time with her, and told her he would hurt her if she "mentioned any names." (Id. 218-20, Ex. 10.)

Morgan conducted an investigation, during which Magalia denied Plaintiff's version of events.

(Scialdone Aff. ¶ 4, Ex. A)  Plaintiff was advised that should any further incident take place, to please

contact human resources.  No such further incidents occurred.  (Pl. Dep. 223.)

Plaintiff also testified that on an unspecified night when working in the Pressroom, non-Post

management union members threw paper on the floor for her to clean up. (Id. 171-72.)  After Plaintiff

complained to the Pressroom foreman, John Pearce, it did not happen again. (Id. 172-73.)

## IV.    The Post's Policy Against Workplace Discrimination, Harassment And Retaliation

The Post maintains an equal employment opportunity and unlawful harassment policy, setting

forth the Company's commitment to a work environment free of discrimination or harassment based on

sex and every other category protected by federal or state law, providing various means by which

employees can bring claims of alleged harassment to its attention, and prohibiting retaliation of any type

against employees who provide information in connection with any such complaint.  (Scialdone Aff. ¶ 5,

Ex. B.)  During her employment, Plaintiff was aware of these policies.  (Pl. Dep. 195.)

## ARGUMENT AND ANALYSIS

Summary judgment is proper where the pleadings, depositions and affidavits on file "show that

there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  It is well

settled that it is the plaintiff who ultimately bears the burden of coming forth with sufficient evidence on

*each element* that must be proven. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as

to the material facts") (emphasis added).  As such, a plaintiff's "purely conclusory allegations of

discrimination, absent any concrete particulars, are insufficient" to defeat a summary judgment motion.

Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003).

Here, Plaintiff provides only unsubstantiated conclusions and inadmissible hearsay to support her allegations of discrimination, harassment and retaliation; as such, summary judgment in favor of the Post is fully proper. <u>Celotex Corp.</u>, 477 U.S. at 322-23.  <u>See also</u> <u>Loucar v. Boston Mkt. Corp.</u>, 294 F. Supp. 2d 472, 477 (S.D.N.Y. 2003) ("summary judgment is appropriate [] where a plaintiff's argument is based on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct") (internal citation omitted).

## I.     Plaintiff's Claims of Discrimination In The Post Pressroom Are Time Barred

A plaintiff alleging claims under Title VII must file a charge with the EEOC alleging discrimination no more than 300 days after notice of the alleged adverse employment action. <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 712 (2d Cir. 1996) (<u>citing</u> 42 U.S.C. § 2000e-5(e)). "The 300-day filing requirement functions as a statute of limitations and is strictly construed in this circuit." <u>Delena v. Verizon NY Inc.</u>, No. 02-CV-0372C(F), 2007 WL 2973583, at *7 (W.D.N.Y. Oct. 10, 2007) (internal citations omitted).  Furthermore, as the Supreme Court recently reiterated, "a timely EEOC charge must be filed with respect to each discrete alleged [act of discrimination in] violation [of Title VII]." <u>Ledbetter v. Goodyear</u>, 127 S. Ct. 2162, 2175 (2007).  "It is well-settled that alleged adverse employment practices such as [] denial of preferred job assignments are considered discrete acts." <u>Benson v. N. Shore-Long Island Jewish Health Sys.</u>, 482 F. Supp. 2d 320, 329-30 (E.D.N.Y. 2007); <u>see also</u> <u>Ledbetter</u>, 127 S. Ct. at 2165 ( "refusal to hire" is a discrete act requiring a separate EEOC charge); <u>Plant v. Deutsche Bank Sec., Inc.</u>, No. 07 Civ. 3498(AKH), 2007 WL 2187109, at *4 (S.D.N.Y. July 23, 2007) (job assignments are "actionable, if at all, when they happen").

Plaintiff filed her EEOC charge on October 31, 2006.  Therefore, all of her claims based on alleged employment actions occurring prior to January 5, 2006 (more than 300 days before Plaintiff filed her charge) are time-barred.  Specifically, Plaintiff's alleges she suffered the following discrete acts of purported discrimination in the Post Pressroom, all of which occurred outside the 300-day period:

- On October 6, 2004, Plaintiff was "turned away once" at the Pressroom shape and "not hired" for work, being told that she could not work in the Pressroom because she has a union card with the Mailers' Union (Pl. Dep. 59-61);

- In January 2005, Plaintiff was placed on the Casual List below other male workers who started shaping after her (Id. 179-180);

- On March 9, 2005, Plaintiff was skipped over on the Casual List for a work assignment, contrary to the Post's shape procedures (Id. 152-55); and

- In April 2005, during Plaintiff's requested "vacation," Walsh prevented her from signing-in and shaping for work which she admittedly would not be available to accept. (Id. 100-02.)

Each of these allegations concerns a discrete act that occurred well before January 5, 2006, and thus, they are all untimely. Nonetheless, their merits, or more accurately, lack thereof, are discussed below.

## II.    Plaintiff's Gender Discrimination Claims Fail As A Matter Of Law

Plaintiff's claims must fail because she has no evidence that any incident of which she complains occurred (if they occurred at all) because of her gender. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000). Here, Plaintiff has no direct evidence of discrimination, and thus she must try to prove her claims under the burden-shifting framework developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[4]

Plaintiff cannot establish a *prima facie* case under McDonnell Douglas, because she cannot show she suffered adverse employment actions and/or that any such employment actions occurred under circumstances giving rise to an inference of discriminatory intent. Sanders v. NYC Human Res. Admin., 361 F.3d 749, 755-56 (2d Cir. 2004). To meet her *prima facie* burden, Plaintiff must show that each claim of discrimination involved an "adverse employment action," not merely an action which she disliked or disagreed with, but one that materially affected the terms, conditions or benefits of her employment. See Wells-Williams v. Kingsboro Psychiatric Ctr., No. 03-CV-134(CBA), 2007 WL

---

[4] Claims under the NYSHRL and the NYCHRL are analyzed in the same manner as claims under Title VII. Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000).

1011545, at * 3 (E.D.N.Y. Mar. 30, 2007) ("To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.").

Here, Plaintiff cannot make out a prima facie case on any of her discrimination claims because she cannot "meet the most important requirement of a *prima facie* case, namely that the actions on which [she] base[s] [her] claims occurred under circumstances giving rise to an inference of discrimination." <u>Seils v. Rochester City Sch. Dist.</u>, 192 F. Supp. 2d 100, 110 (W.D.N.Y. 2002). Along with being insufficient to establish a *prima facie* case of discrimination – in the Pressroom or in the Mailroom whatsoever – Plaintiff's conclusory allegations are plainly inadequate to demonstrate that the Post's articulated legitimate reasons for its actions are pretexts for intentional gender discrimination.

### A.    Plaintiff Cannot Establish A Prima Facie Case of Gender Discrimination In The Post Pressroom

#### 1.    Plaintiff's Allegation That She Was Not Hired On October 6, 2004 Fails To State A Cognizable Claim Of Gender Discrimination

Plaintiff claims that she was discriminated against when she was not permitted to work in the Post Pressroom on October 6, 2004. (Pl. Dep. 59; Compl. ¶ 25.) As an initial matter, this claim is time barred as discussed in Point I, <u>supra</u>. That fatal flaw aside, Plaintiff admits that Walsh told her the reason he was denying her the ability to so work was because she was in the Mailers' Union. (Pl. Dep. 61.) That was Walsh's and the Post's practice; not to allow someone who was a member of one newspaper industry union to work in a different department. (Walsh Aff. ¶ 12; Walsh Dep. 107-08.) It is also undisputed that Walsh enforced this practice against Plaintiff as soon as he became alerted to her Mailers Union membership. (Walsh Aff. ¶ 13.) Plaintiff further concedes that Vincent told her the same thing and that she has no reason to believe he would discriminate against her because of her sex. (Pl. Dep. 78-79.) Plaintiff also admits that the only basis for her belief that Walsh's denial was discriminatory on this one day is (a) the fact that she is a woman, and (b) her unfounded belief that other employees work in two departments:

Q:      …what basis do you have to believe that [the Post's not hiring you in the Pressroom on October 6 was] because of your gender, because you're a woman?

A:      I'm not the only one who is working in two department.  There is other males that work in two departments also.

Q:      Okay.  And besides the other men … is there any other reason why you believe that you were told you couldn't work in the pressroom because you're a woman?

A:      …I'm trying to think. (Id. 63-64.)

…

A:      I don't think so.

Q:      Yes or no?

A:      I think that's a no. (Id. 66.)

Plaintiff's subjective belief is, without more, insufficient evidence of unlawful intent.

Apart from its being untimely, Plaintiff's claim fails for two clear reasons:  *First*, her claim that men worked in more than one department is irrelevant.  It is undisputed that prior to the Mailers' Union president striking a deal with Vincent to create an exception for Plaintiff, Post practice was uniformly enforced to not allow any individual *who was in one newspaper industry union* to work in two different departments. (Walsh Aff. ¶ 12.).  *Second,* none of the alleged comparators violated this practice. Plaintiff cannot establish the that "other males," her purported comparators, are similar to her in all material respects, as required under Second Circuit precedent, see Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003), or that they were treated more favorably – none were allowed to work in the Pressroom *while also being a member of another newspaper industry union*.  (Walsh Aff. ¶ 18.)

Plaintiff's alleged comparators are Todd Carroll, Chris Sullivan, Steve Ruiz, Phil Anzalone, Apolinar Figuera, Jeff Pochter, Dwayne Rivera, John Smith and James Dillon, and as fully explained below, none provide a proper basis of comparison. Todd Carroll is a Mailer, but he has never worked in the Post Pressroom.  (Id.)  Sullivan and Ruiz recently became Mailers on December 4, 2007, and have not worked in the Pressroom since.  (Sutherland Aff. ¶ 9; Walsh Aff. ¶ 18.)  Anzalone, Figuera, and Pochter are Pressmen and are not members of any other industry union (Walsh Aff. ¶ 18) – Plaintiff

admits that she believes these employees stopped working in any other Post department _once_ they became members of the Pressmen's Union. (Pl. Dep. 89-93.)  Neither Rivera nor Smith are members of any union, as Plaintiff concedes. (Id. 93-94, 97.)  And, Dillon, a former Post employee, stopped working in the Pressroom in 2004, before he was a member of any union. (Walsh Aff. ¶ 18.)

Simply stated, none of Plaintiff's alleged comparators are similarly situated to her in all material respects because none was a member of a newspaper industry union at the time they worked in the Pressroom and another department.  Thus, whether as of October 6, 2004, they may have worked in more than one department at the Post is irrelevant as none of them did so in violation of stated Post practice.  In other words, Plaintiff fails to create even a _prima facie_ case as her assertion that she was treated less favorably than similarly situated men is simply not true.  See Pearson v. Bd. of Educ., 499 F. Supp. 2d 575, 597 (S.D.N.Y. 2007) (granting summary judgment where plaintiffs pointed only to their race, stray comments and "their perception that they were treated differently" to support their claim; "Plaintiffs have not produced any evidence of how white teachers were treated at all.").

### 2.   Plaintiff's Claim That She Was Discriminated Against In Her Placement On The Casual List Is Insufficient As A Matter Of Law

Similarly, Plaintiff has absolutely no evidence whatsoever that her placement on the January 2005 Causal List, yet another time-barred claim, was the result of intentional gender discrimination – she concedes that the only basis for her belief of discriminatory animus is that "I am the only female on the casual list and I am the last one on that list." (Pl. Dep. 175-76.)  Plaintiff's conjecture certainly cannot be used to establish an inference of discrimination.  See Figueroa v. City of NY, No. 00 CIV. 7559(SAS), 2002 WL 31163880, at *3 (S.D.N.Y. Sept. 27, 2002) (Plaintiff's testimony that she is a woman and was treated badly is insufficient to infer discrimination); Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 358 (S.D.N.Y. 2006) ("Plaintiff has produced no evidence, other than her own statement"; "Evidence of disparate treatment cannot be based on conclusory allegations.").

Another fatal flaw to Plaintiff's claim is that the Post has articulated a legitimate, non-discriminatory reason for her placement, and Plaintiff has absolutely no evidence that this reason is a pretext, much less a pretext _for_ gender discrimination. It is _undisputed_ that the Post placed Plaintiff on the Casual List according to her ratings on aptitude and attitude, as compared to other Provisionals, each of whom scored significantly higher than Plaintiff. (Walsh Aff. ¶ 15.) It is also undisputed that the Post rated men lower than Plaintiff and such men did not make the Casual List. (Id.) Plaintiff fails to provide any evidence suggesting that legitimate non-discriminatory criteria used by the Post to rank the Casual List were not followed – she only says: "I show up and I show good attitude and I do my work all the time." (Pl. Dep. 178-79.) Rather, Plaintiff incomprehensibly decries that Vincent's allowing her to shape in the Pressroom – which in fact provided her the opportunity to be considered for the List – somehow establishes that the Casual List was arrived at in a discriminatory manner. (Id.) Plaintiff contends that, in her opinion, the order should be based on when she "started shaping," and concludes that her co-workers who "came after me ... should be placed after me." (Id. 179.) The date one first ever shaped at the Post, however, is _not_ a criteria used by the Post in determining placement on the Casual List. (Walsh Aff. ¶ 14.) In the end, Plaintiff's disagreement with the Post's unbiased criteria shows neither discrimination nor pretext. See David v. Children's Vill., 132 Fed. Appx. 872, 873-74 (2d Cir. 2005) ("[W]e do not second-guess an employer's personnel decision so long as it is based on something other than a prohibited ground"); Jordan v. Olsten Corp., 111 F. Supp. 2d 227, 236 (W.D.N.Y. 2000) ("precedent from this circuit [] provides that Title VII does not provide remedies against poorly thought-out or unwise employment actions, but only against [] discriminatory employment actions."). Here, the Post's criteria are neither "unwise" nor "poorly thought out," despite Plaintiff's protestations.

### 3.    Plaintiff Cannot Show That Work Assignment Procedures In The Pressroom Were Carried Out In A Discriminatory Manner

Plaintiff claims that _once_, shape procedures were not followed, on March 9, 2005 – again, a time-barred claim – resulting in her being skipped for a shift. (Pl. Dep. 147, 152.) Even assuming _arguendo_ this happened, the fact of it happening does not establish that it happened _because_ Plaintiff was a woman. Plaintiff concedes that her subjective observations alone are her only proof that this incident even occurred. (Id. 121, 142-55.) The Post does not know if in fact on one occasion three years ago Plaintiff may not have been called; she certainly never complained to anyone at the time about it. (Walsh Aff. ¶ 17.) One specific alleged instance of undesirable treatment does not establish gender discrimination. See Wright v. Goldman Sachs & Co., 387 F. Supp. 2d 314, 327-28 (S.D.N.Y. 2005) ( "not everything that makes an employee unhappy is an actionable adverse action"; being denied work on a particular day "constitute[s] the sort of inconsequential harm[] that, as a matter of law, cannot give rise to a Title VII disparate treatment claim"); Figueroa v. City of NY, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002) ("being precluded from working on a particular day [does not] constitute materially adverse employment action[]....Courts require actions that are more significant and permanent."). And, Plaintiff's own testimony is fatal to her claim; she admits she does not know why she believes her possibly having been skipped that day was because of her gender. (Pl. Dep. 152-53.)

Next, Plaintiff complains not about how _she_ was treated, but about the Post's treatment of co-Casual Kenny Vaughan, who was higher up on the Casual List. Plaintiff first complains about her belief that once Vaughan was given an extra shift in violation of some work rule. (Id. 155-56.) Plaintiff's only basis for believing such a work rule exists is the hearsay statement of a Pressman. (Id.) As concerns Casuals, the Post has _no such rule_. (Walsh Aff. ¶ 10.) Plaintiff also complains that Vaughn was allowed to take an extended absence without losing his priority placement, allegedly in violation of shape procedures. (Pl. Dep. 164-65.) On this point, Plaintiff is somewhat correct – the Post did excuse

Vaughan's several month leave of absence because he had a medical emergency in his family (his sister died) (Walsh Dep. 96-97; Walsh Aff. ¶ 21) – but how that shows gender discrimination against Plaintiff is beyond comprehension. See Ganthier v. N. Shore-Long Island Jewish Health Sys., Inc., 345 F. Supp. 2d 271, 280 (E.D.N.Y. 2004) (no inference of discrimination where another received a benefit). She certainly has neither requested nor been denied any leave of absence. (Walsh Aff. ¶ 21.)

### 4. Plaintiff's Claim Regarding Her April 2005 "Vacation" Is Baseless

Plaintiff alleges she was discriminated against in April 2005 (also time-barred) when she took a week of vacation and was told that if she signed-in on the shape sheet during her vacation but did not accept her work assignment she would be violating the shape rules she received in 2005. (Id. ¶ 11, 22, Ex. B.) In other words, Plaintiff wanted to take vacation yet get credit for shaping despite the fact that she had no intention of accepting a work assignment. (Pl. Dep. 100-02.) No male employee has ever been allowed to do what Plaintiff tried to do. (Walsh Aff. ¶ 22.) And, Plaintiff admits she has no evidence that the Post's prohibiting her from signing-in for work she could not accept was gender discrimination. (Pl. Dep. 102.)

Plaintiff further speculates that co-worker John Daniello was allowed to violate some phantom shape rule on an unknown date when he allegedly left Post premises between the shape and the start of his work assignment. (Id. 157.) Plaintiff does not really know what happened and admits she never tried to do the same thing. (Id. 157-58.) Not to mention, there is no such rule. (Walsh Aff. ¶ 10.) The Post does not know how this is evidence of anything.

### B. Plaintiff Cannot Establish A Prima Facie Case of Gender Discrimination In Assignment Of Work In The Post Mailroom

Plaintiff contends that she was also discriminated against, by a separate group of Post managers, in assignment of work in the Mailroom by (1) being assigned the "stack down," a job involving stacking newspapers, and (2) receiving work assignments after "Outside Card Holders" who were suspended.

Here too, upon closer examination, Plaintiff admits that her claims are based on her misguided understanding of work assignment procedures and priority at the Post, and pure unfounded speculation.

1. **Plaintiff Patently Fails To Produce Any Evidence Indicating She Was Discriminated Against By Being Assigned To The "Stack Down"**

Plaintiff falsely alleges that "Females were always assigned to 'the stack down,' rather than males," (Compl. ¶ 36), and points to a single instance, in November 2007, when a Mailroom foreman allegedly pulled her off a Feeder machine, replaced her with a man, and then assigned her to the "stack down," as proof of discrimination. (Pl. Dep. 51-52.) As an initial matter, this incident is not properly before the Court as she never filed an EEOC charge over it. That aside, Plaintiff is mixing apples and oranges. Whether or not she was pulled off one job on a given night and put on another has nothing to do with whether men ever work the stack down. Moreover, Plaintiff admits that the stack down is just a different job duty, with no impact on her compensation. (Id. 54.)

In addition, Plaintiff has no evidence that she was pulled off the Feeder machine because of her gender, and, most importantly and contrary to her Complaint, Plaintiff concedes that both men and women work on the "stack down." (Id. 42.) Indeed, Post records show that in the month of November 2007 (the month she complains about), 116 "stack down" assignments were given, and 99 of these shifts went to men, while only 17 were assigned to women. (Sutherland Aff. ¶ 8.) In each of these 116 shifts, the number of men assigned the "stack down" was either equal to or greater than the number of women assigned. (Id.) During November 2007, Plaintiff worked nine shifts, four on the Feeder and five on the "stack down," and during each of these five occasions, more men were assigned the job than women. (Id. ¶ 13.) As such, Plaintiff's allegation of always being assigned to the stack down is patently untrue.

In any case, there is a legitimate nondiscriminatory reason for Plaintiff's assignment to the "stack down" job: it is the lowest priority job in the Mailroom and is therefore always assigned to Outside Card Holders or Casuals by virtue of their priority and the Mailers' Union CBA. (Id. ¶ 7.) Plaintiff

recognizes that "outside card men [her status] have no priority," and she in fact explicitly concedes that she has no reason to believe she should not be assigned to the "stack down." (Pl. Dep. 40, 128.)

### 2.    Plaintiff's Claim That Suspended Employees Received Work Before Her In The Mailroom Is Bizarre And Untrue

Likewise, Plaintiff's claim that she was inappropriately assigned work after suspended Outside Card Holders is baseless – it never happened. Plaintiff concedes she does not have any first-hand knowledge of a specific time when she was passed over for work in favor of a suspended employee, or if any of the employees she identifies (Chris Sullivan, Andre Smith, John Stallworth) were ever suspended. (Id. 141-44.) In fact, employees suspended from the Post Mailroom do not work in the Mailroom during their suspension. (Sutherland Aff. ¶ 10.) None of the employees besides Sullivan have ever been suspended from the Post Mailroom, and Sullivan did not work during the period of his suspension. (Id.)

### C.    Plaintiff's Claim Of Discrimination By Post Security Also Lacks Merit

Plaintiff also alleges that Post Director of Security Vasquez discriminated against her when he (1) enforced the Post's security rule, on September 14, 2007, that employees shaping in the Pressroom must wait in the shape house or off site before the start of a shift, but cannot loiter on Post premises (Pl. Dep. 227-29), and (2) had her escorted by a security guard on a single unspecified occasion in June 2006 when she arrived at the Bronx Facility without identification. (Id. 233.) Plaintiff concedes that she has no basis other than her subjective belief to conclude that Vasquez took any actions against her on account of her gender. (Id. 234.) Plaintiff confirms that her email to HR Director Morgan regarding the September 14 incident – which does not mention gender as playing any part in this encounter – is a true, accurate and complete account of what occurred between her and Vasquez. (Id. 232-33, Ex. 12.) Nor does Plaintiff point to any comparators for this issue; Plaintiff identifies a male employee "Joe" as being allowed on Post premises during the shape, and Todd Carroll as being at the Bronx Facility without his

identification. (Pl. Dep. 229, 235-36.)  But, Plaintiff concedes she has no evidence besides speculation and hearsay supporting her claims regarding either person. (Id.)

Plaintiff does not – and cannot – argue that the rule requiring Casuals to wait in the shape house or off Post premises following sign-in, or the rule requiring individuals at the Bronx Facility to have identification, are discriminatory.  And, Plaintiff does not contest that she violated each rule, nor does she contest the fact that Vasquez told her that her violations of these rules were what motivated his actions. (Id. 227, 232-35, Exs. 11-12.)  Instead, she reasons that the rules were unfair because she didn't know about them, or because she never saw them enforced against anyone else. (Id. 227-28, 236.)  Once again, by these claims, Plaintiff offers speculation, but no evidence of actual disparate treatment.

### D. Plaintiff's Claim Regarding Transfer Of Her Mailers' Card Fails On Its Face

Plaintiff bizarrely contends that the Post unlawfully refused to allow her to transfer her Mailers' union card from the Times to the Post. (Compl. 20; Pl. Dep. 191.)  Yet, incredibly, Plaintiff testified that she did not in fact want her union card transferred because she thought such preferential treatment might make enemies of her co-workers. (Pl. Dep. 193.)  And, it is undisputed that the Mailers' Union alone, *and not the Post*, has sole authority to make such a transfer. (Granito Aff. ¶ 10; Pl. Dep. 192-93.)

## III. Plaintiff Cannot Establish That She Suffered Actionable Sexual Harassment

To state a *prima facie* case of sex-based hostile work environment, Plaintiff must demonstrate: (1) that the alleged harassment was motivated by her gender; (2) that it was sufficiently severe or pervasive to alter the conditions of her employment; and (3) that a specific basis exists for imputing the alleged objectionable conduct to the employer.  See Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002).  The Post is entitled to summary judgment on Plaintiff's harassment claims as well because she cannot satisfy even the first prong of this test, much less establish that she was subject to conduct creating a sexually abusive working environment imputable to the Post.

**A.     Plaintiff Fails To Establish A Prima Facie Case Because She Does Not Allege That Any Harassment Was On Account Of Her Sex**

It is "'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." Id. at 374; see also Muhammad v. NYC Transit Auth., 450 F. Supp. 2d 198, 203-04 (E.D.N.Y. 2006) ("After all, 'Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discriminate[ion]…because of…sex' or other protected characteristics.") (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).

Here, Plaintiff premises her sexually hostile work environment on three discrete occurrences:

- an altercation with co-worker John Hom stemming from his unhappiness with the way Plaintiff greeted his wife at a holiday party (Pl. Dep. 199-209);

- an incident occurring off Post premises, where co-worker John Magalia allegedly threatened Plaintiff (Id. 218-20); and

- a single incident in which non-management union members threw paper on the floor, rather than in the garbage, for Plaintiff to clean up (Id. 171-73).

That's it. That's Plaintiff's hostile work environment, according to her testimony. And, Plaintiff admits that after she complained to the Post, she did not experience any further incidents. (Id. 216, 223, 173.) Moreover, nowhere – not in her Complaint, not in the Post's report of her encounter with Hom, not in Morgan's transcript of Plaintiff's version of her incident with Magalia, not in Plaintiff's own report regarding Magalia filed with the NYPD, not in her deposition testimony – does Plaintiff present anything even suggesting that any of these alleged incidents occurred because of her gender.[5] (Id. 198, 221-223, 237-238, Exs. 10, 13; Compl.; Vazquez Aff. Ex. A.)

To the contrary, Plaintiff admits the incidents with Hom and Magalia were not sexual harassment:

Q:     Do you have any reason to believe that this dispute you had [with Hom], [] everything described in this memo was sexual harassment?

---

[5] Plaintiff admits that Vazquez's report of the Hom incident, Morgan's report of the Magalia incident and her police report are complete, true and accurate. (Pl. Dep. 198, 221, 238.)

A.    I don't think it was sexual, no.  (Pl. Dep. 214.)

…

Q:    I read this memo [regarding the incident with Magalia and] it doesn't mention that you think you're being [harassed] because you're a woman.  So did you not believe it [was gender based] then?

A.    I don't think so.

Q:    But do you believe it now?

A.    I don't think so. (Id. 222-23.)

And, Plaintiff testified that her only basis for believing that the union members' one-time activity was gender based is because "[t]hey weren't doing it anywhere else to anyone else."  (Pl.'s Dep. 173.) Because the incidents were undoubtedly "facially sex-neutral," and Plaintiff has provided no basis on which to infer that sexual motivation is behind what appears to be pure disagreements with other employees, Plaintiff's claim of a hostile work environment harassment fails on its face.  See Alfano, 294 F.3d at 378 (quickly excluding employee's seven sex-neutral incidents from the analysis of the hostile environment claim); Muhammad, 450 F. Supp. 2d at 204 (rejecting claim where "plaintiff implies that her co-workers' hostility stemmed from jealousy and resentment" rather than from her protected trait).

**B.    Plaintiff's Alleged Harassment Was Not Sufficiently Severe Or Pervasive To Create An Actionable Hostile Work Environment**

As is facially apparent from Plaintiff's allegations concerning these three discreet incidents, they did not, either separately or taken together, rise to the level of conduct that is sufficiently pervasive or severe to create a colorable abusive work environment.  As the Supreme Court long ago held, for alleged sexually harassing conduct to be actionable, it must, among other things, require "a woman [to] run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living…." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).  Along these lines, a Plaintiff must show that her workplace was "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Drummond v. IPC Int'l, Inc., 400 F.

Supp. 2d 521, 528 (E.D.N.Y. 2005) (internal citation omitted); see also Allen v. Advanced Digital Info. Corp., 500 F. Supp. 2d 93, 104 (N.D.N.Y. 2007) ("[T]he incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") (internal citation omitted).

In this case, Plaintiff has not shown that her alleged harassment was severe and pervasive or that it had any material effect on her terms and conditions of employment – the three incidents, as Plaintiff herself describes them, appear wholly based on unrelated disagreements with co-workers, and two of the three did not even occur at work. (Pl. Dep. 195-241, Ex. 10; Vazquez Aff. Ex. 5.)  Nor was Plaintiff ever physically assaulted. (Id. 209.)  Under these circumstances, Plaintiff cannot enunciate a cognizable harassment claim. See Alfano, 294 F.3d at 380 (separate sex-neutral incidents were "too few, too separate in time, and too mild"; "No reasonable fact-finder could say [the] workplace was 'permeated with discriminatory intimidation'"); Baptiste v. Cushman & Wakefield, No. 03 Civ. 2102(RCC), 2007 WL 747796, at *11 (S.D.N.Y. Mar. 7, 2007) ("nothing Plaintiff has alleged, let alone supported with evidence, rises to the level of intimidation, ridicule or insult"); Riscilli v. Gibson Guitar Corp., No. 06 Civ. 7596(RJH), 2007 WL 2005555, at *3 (S.D.N.Y. July 10, 2007) (isolated incidents are "not 'sufficiently severe or pervasive'").

## C.    Plaintiff Cannot Impute Her Co-Worker's Conduct To The Post

Finally, Plaintiff has no basis for imputing her alleged gender-neutral, co-worker harassment to the Post.  Plaintiff *admits that no one in Post management ever made any gender-based derogatory remarks*. (Pl. Dep. 98-99.)  Further, Plaintiff acknowledges that she is aware of the Post's discrimination policy and reasonable avenues for complaint of workplace discrimination or harassment (id. 195), and admits that after complaining the Post intervened and the conduct stopped. Cf. Bampoe v. Coach Stores, Inc., 93 F. Supp. 2d 360, 374 (S.D.N.Y. 2000) ("[W]here the perpetrator [of harassment] is [a] co-worker, the employer will only be liable where it provided no reasonable avenue for complaint

or knew of the [unlawful activity] but did nothing about it."). In addition to the fact that Plaintiff never complained to the Post that she believed her "harassment" had anything to do with her gender, see Fosen v. NY Times, No. 03-CV-3785 (KMK)(THK), 2006 WL 2927611, at *9 (S.D.N.Y. Oct. 11, 2006) (no liability where "there is no evidence that [employee] put [employer] on notice of her feeling that his conduct was gender-based"), the undisputed evidence shows that each time she complained, whether to HR, a foreman or Security, the Post responded effectively, as evidenced by the undisputed fact that the complained of conduct ceased. (Pl. Dep. 173, 216, 223.)

## IV.     Plaintiff's Retaliation Claim Also Fails As A Matter Of Law

To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) she engaged in a protected activity; (2) her employer had knowledge of such activity; (3) she suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the materially adverse action. See Burlington N. & Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2414-15 (2006).[6] Plaintiff claims that two actions were incidents of unlawful retaliation:

- Mailroom foreman Granito and Union Chairman Nick Vazzano allegedly hiring other workers ahead of her who had not been shaping as long as her. (Pl. Dep. 247-48); and
- Joseph Vincent's September 4, 2007, letter to Plaintiff indicating that she can continue working in two departments (Pressroom and Mailroom) but asking that she refrain from "sharp shooting" which "negatively impacts Post operations." (Id. 299-300.)

With regard to either incident, Plaintiff can not satisfy the necessary elements of this claim.

### A.     Plaintiff's Claim Of Not Being Hired Before Other Workers In The Mailroom Could Not Be The Result Of Retaliation By The Post

Plaintiff believes she was retaliated against by the Post in the "order of hiring" – that after she filed her charge in October 2006 with the EEOC, she was called for work after others who had first started shaping after she had. (Id. 248; Compl. ¶ 57.) This claim must fail for two reasons. *First,*

---

[6] On a motion for summary judgment, retaliation claims brought under Title VII and the NYSHRL are analyzed under identical standards. Robinson v. Am. Stock Exchange, No. 04 Civ. 5899(PAC), 2007 WL 3084970, at *5 (S.D.N.Y. Oct. 22, 2007).

Granito did not know of Plaintiff's EEOC charge until January 2007, months after it was filed. (Granito Aff. ¶ 7.)  Thus, any alleged change in hiring practice by Granito in November and December 2006 could not have been retaliatory.  See Shah v. Conl. Ed. Corp. of NY, 175 Fed. Appx. 436, 437-38 (2d Cir. 2006) (no inference of retaliation where the supervisors responsible for the adverse actions taken were not aware of plaintiff's protected activity).

*Second*, and more importantly, Plaintiff cannot show retaliation by the Post because Chairman Vazzano, and *not* Granito, actually made the hiring decisions about which she complains.  (Granito Aff. ¶ 4; Pl. Dep. 250.)  Put another way, someone not in Post management, but a Union official, made the decision of which Outside Card Holders to hire first, yet Plaintiff does not make a single claim against the Mailers Union, and she admits she never complained about Vazzano. (Pl. Dep. 250; Compl.)  As such, Chairman Vazzano would have absolutely no reason to have retaliated against her.

### B.    Vincent's Letter Cannot Be The Basis Of A Retaliation Claim Because It Does Not Constitute A Materially Adverse Action

Plaintiff cannot rely on Vincent's September 4, 2007 letter because (1) she has not filed an EEOC charge over it; and (2) the letter did not result in, or itself constitute, a materially adverse employment action.  Simply stated, on its face, Vincent's letter to Plaintiff did not alter *any* term or condition of her employment – it was solely a recognition of the status quo of her employment situation, *i.e.*, her being permitted to work in both the Mailroom and Pressroom and a caution that she should not be "booking jobs in the Post's Mailroom and then scratching at the last moment" to take a shift in the Pressroom, or vice versa, because such "sharp shooting" disrupts Post operations. (Pl. Dep. Ex. 1.)  Nor did Plaintiff at her deposition try to claim that the letter had any impact on her employment. (Id. 289.)

Moreover, courts hold that such "trivial harms," which have no effect on an employee's responsibilities, title, or compensation, are *not* materially adverse actions for purposes of a retaliation claim. Burlington, 126 S. Ct. at 2415-17; see also Scott v. Cellco P'ship, No. Civ. 7245 (LMM), 2007

WL 1051687, at *2 (S.D.N.Y. Apr. 3, 2007) ( "general reprimands about plaintiff's lateness ... and alleged excessive scrutiny of plaintiff ...[even] if true, do not constitute adverse employment actions as now defined in <u>Burlington</u>"); <u>Moore v. Con. Ed. Co. of NY, Inc.</u>, No. 00 Civ. 7384 (PAC), 2007 WL 831807, at *6 (S.D.N.Y. Mar. 20, 2007) (plaintiff's exclusion from meetings held not to be adverse actions under <u>Burlington</u> because they "did not alter [her] job responsibilities or prestige, or involve even a temporary deprivation of compensation"); <u>Baptiste</u>, 2007 WL 747796, at *9 ( "The Court set a high bar for what constitutes a materially adverse action;" "petty slights or minor annoyances that often take place at work and that all employees experience," are not actionable retaliation); <u>Joiner v. Chartwells and Compass Group N. Am.</u>, 500 F. Supp. 2d 75, 84 n.9 (D. Conn. 2007) (written reprimands are not materially adverse employment actions). And, this letter is almost one year removed from her having filed her EEOC charge, which as a matter of law vitiates any possible causal connection between the two.  <u>See, e.g.</u>, <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001) (approving cases dismissing retaliation claims with three and four month periods between the protected activity and adverse action).

    For the foregoing reasons, the Post submits that summary judgment should be entered dismissing with prejudice the Complaint in its entirety.

Dated: New York, New York
            January 18, 2008

Respectfully submitted,

s/Shari M. Goldsmith
_____
Willis J. Goldsmith (WG 1598)
Shari M. Goldsmith (SG 0909)
222 East 41st Street
New York, New York  10017-6702

J. Jordan Lippner (JL 0064)
News America Incorporated
1211 Avenue of the Americas
New York, New York  10036

*Attorneys for Defendant NYP Holdings, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on January 18, 2008, the foregoing was served

electronically and by U.S. first class mail upon the following counsel who have registered with

ECF:

Neil M. Frank
Frank & Associates, P.C.
500 Bi-County Blvd., Suite 112N
Farmingdale, New York 11735
Tel: (631) 756-0400

*Attorney for Plaintiff Eva Lee*

s/Shari M. Goldsmith
Shari M. Goldsmith