# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVA LEE,<br><br>　　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>NYP HOLDING INC. and<br>RAYMOND WALSH JR.,<br><br>　　　　　　　　　Defendants. | 07 CIV 6475 (JSR) |

### AFFIDAVIT OF LLOYD VAZQUEZ

Lloyd Vazquez, being duly sworn, deposes and says as follows:

1. I am of legal age and am competent to make this Affidavit. I have personal knowledge of the facts set forth in this Affidavit.

2. I have been employed by NYP Holdings, Inc. (the "Post" or "Company") since March 2002. I am currently employed as the Post's Director of Security, and have held this position since April 2003.

3. I have known Eva Lee since June 2006 through her employment with the Post in the Pressroom and Mailroom. I understand that Ms. Lee has filed a lawsuit against the Post, claiming she was discriminated against, harassed and retaliated against because of her gender. At no time during Ms. Lee's employment did I discriminate, harass or retaliate against Ms. Lee on the basis of her gender or for any other reason. Similarly, I have never known or witnessed any member of Post management, or any Post employee, discriminating, harassing or retaliating against Ms. Lee on the basis of her gender, or for any other unlawful reason. I have never made any decision with regard to Ms. Lee or taken any action against Ms. Lee because she is a woman

or because she has filed claims with the Equal Employment Opportunity Commission and in Court.

4. On December 21, 2006, I conducted an interview of Ms. Lee regarding her report to Post Security about an incident between her and co-worker John Hom. Mailroom foreman Joseph Vazzano was also present during this interview. Ms. Lee explained that her disagreements with Mr. Hom at the Post's facility in the Bronx ("Bronx Facility") stemmed from an encounter occurring not during work time and away from the Bronx Facility, at the Post's holiday party in Manhattan, when Mr. Hom did not like the way Ms. Lee greeted his wife. Ms. Lee then described several interactions with Mr. Hom at the Bronx Facility following this encounter, where she attempted to approach Mr. Hom to determine why he was upset. Mr. Hom refused to speak with her and asked her to leave him alone. When Ms. Lee and Mr. Hom did speak, Ms. Lee claimed that Mr. Hom made some ambiguous remarks, including that "they are looking to get you." At no time during this interview did Ms. Lee state that she believed Mr. Hom was sexually harassing her, or harassing her on the basis of her gender.

5. On December 27, I directed my security manager Luis Rios to verify with both Whit Sutherland, the Superintendent of the Post Mailroom, and Raymond Walsh, the Superintendent of the Post Pressroom, that no further incidents occurred between Ms. Lee and Mr. Hom. Mr. Rios reported that none had. On December 29, I also contacted Mr. Hom, who denied that he had threatened Ms. Lee, claimed Ms. Lee was rude to his wife and also confirmed that no further incidents had transpired between him and Ms. Lee. During this week, I also followed-up with Ms. Lee to verify that she had no further complaints about Mr. Hom, and to advise her to contact me if she had any other encounters with Mr. Hom. Ms. Lee told me she had not had any further problems with Mr. Hom. After speaking to both Ms. Lee and Mr. Hom,

I determined that no disciplinary action for either was warranted. I am not aware of any subsequent incidents between Ms. Lee and Mr. Hom. The December 31, 2006 report of my interview with Ms. Lee is attached hereto as Exhibit A.

6. For security reasons, all individuals are required to have proper identification in order to enter the Bronx Facility. I understand Ms. Lee claims that in June 2006 I had a female security guard escort her to her locker when she was on the Bronx Facility premises without identification. I have no specific recollection of any particular time that I required a security guard to escort Ms. Lee to her locker. The one thing I can guess that she may be referring to is that if she, or any other employee, was on the Bronx Facility premises without identification and needed to get into an area of the facility which required identification to access, I would have a security guard escort the employee to that area. I have not treated Ms. Lee any differently than I have treated others who have shown up for work or were present on the Bronx Facility premises without proper identification. I am not aware of any other individuals being on the Bronx Facility premises without proper identification. Ms. Lee never complained to me that other individuals were allowed on the premises without proper identification, or that I was discriminating against her or harassing her because of her gender, or for any other impermissible reason, by enforcing the Post's security rules.

7. Similarly, Security policy dictates that all individuals shaping for the Pressroom must wait either in the shape house or the area directly outside the shape house; the Post does not allow any individuals to wait inside the Bronx Facility during the shape because it is a security risk to have individuals roaming the premises unsupervised. Accordingly, if individuals wait in the shape house or street outside, there is a security guard present to monitor the individuals' and

the Post premise's safety. Once they are called from the shape for work, individuals can enter the Bronx Facility.

8.     I observed Ms. Lee waiting in her car on the Bronx Facility parking lot on August 21, 2007, and informed her that she was required to wait in the shape house or in her car directly outside the shape house, but that she could not be inside the Post premises while she was not working. Nonetheless, on Friday September 14, 2007, I observed Ms. Lee again waiting for her work assignment in her car inside the Bronx Facility parking lot. Again, I instructed Ms. Lee that she must wait in the shape house or directly outside the Bronx Facility, in accordance with Post rules. Ms. Lee refused. After I politely asked Ms. Lee a second time to wait in the shape house, or in her car outside the shape house, she again refused. At this point, it became clear to me that Ms. Lee would not leave the site, and I therefore requested her identification card. I did not prevent Ms. Lee from participating in the shape, and I instructed her that her identification card would remain in Security custody until Monday morning. She was also told that she could shape and work during that weekend, but she would need to get a temporary identification card. Post Security Manager Jose A. Rivera was present for this incident, and his report of what occurred is attached hereto as Exhibit B.

9.     Ms. Lee never complained that I was discriminating, harassing, or retaliating against her on the basis of her gender, or any other unlawful reason. At the time of this incident, I repeatedly advised Ms. Lee that I was only enforcing Post policy, and I was not discriminating, harassing or retaliating against Ms. Lee on the basis of her gender, or otherwise. Ms. Lee also did not inform me that other employees or individuals had been violating the Post rules by waiting for work assignments during the shape inside the Bronx Facility instead of in the shape house or directly outside. I am not aware of other employees or individuals violating this rule.

I have read the foregoing statement consisting of 9 numbered paragraphs and swear that it is true and correct to the best of my information and belief.

_____
Lloyd Vazquez

Sworn and subscribed to before me this _17_ day of January 2008.

_____
Notary Public

My commission expires: 9-30-10

STEPHEN McLAUGHLIN
Notary Public, State of New York
No. 01MC4807452
Qualified in Nassau County
Commission Expires Sept. 30, 20_10_

- 5 -

# EXHIBIT A

December 31, 2006

From: Lloyd Vazquez, Director of Security, New York Post

To: Kris Socia, Director of Production, New York Post

Subject: **Complaint of harassment as reported by Mailer/Shaper Eva Lee**

1. **On December 21, 2006**, at approximately 8 pm, Mailroom Shaper Eva Lee contacted New York Post Security Department and indicated that she wanted to report an incident of harassment against her. Eva Lee stated that a co-worker (Mailer/Shaper John Hom) had harassed her while she was on site at the New York Post printing facility located at 900 East 132 Street, Bronx, NY. The interview of Ms. Lee was conducted by the undersigned at the offices of the NYP Mailroom Department also located at the Bronx facility. Also present during the interview was Mailroom Supervisor Joseph Vazzano. The following, in sum and substance, are the details of said interview:

2. Eva Lee stated during the interview that the matter is apparently related to a previous encounter at the NewsCorp holiday party, which took place December 15, 2006, at the NY Hilton, between herself, co-worker John Hom and his wife. Ms. Lee advises that John Hom was apparently upset at her (Eva Lee) as a result of the manner in which she greeted his wife during an introduction at the party. Ms. Lee further stated that a co-worker had informed her that John Hom was upset as a result of the encounter at the party between she (Eva Lee) and his wife. Eva Lee indicated during the interview that she was upset to find out that John Hom was discussing the matter with others and not directly with her. Ms. Lee further stated that John Hom had harassed her on two prior occasions as a result of this matter.

3. Eva Lee stated that the first incident occurred between she and co-worker John Hom on December 16, 2006, at 9 pm, at the 2nd floor inserting area. Lee stated that John Hom was working at the "Tie-Line" machine located at the first floor Mail Room area of the plant. She approached John Hom and brought him a lollypop. Hom replied by stating: "Leave me alone!" Eva Lee asked Hom what was wrong and at that point Hom stated that nothing was wrong. Hom once again asked to be left alone. Lee then stated that she left Hom at his workstation and she responded to her work area at the 2nd floor "Insert Area".

4. Eva Lee stated that at approximately 20 mins later she attempted to contact co-worker John Hom via his cell phone but only reached his voice mail. She left him a message requesting to speak to him. Ms. Lee further reported that she also had a conversation with co-worker: Iris Rodriquez, who also works in the Mail Room Department. Rodriquez advised Lee that John Hom was apparently not happy that night and that he was mad at her (Eva Lee). Rodriquez further

DEPOSITION EXHIBIT
Lee 9
11/13/07
Rich Germosen, CSR, CSR-R, RPR, CRI

informed her that Hom was upset because she (Eva Lee) had "dissed" (disrespected) his wife at the party. Rodriquez indicated that Hom had stated that she (Lee) had rolled her eyes during the introduction of his wife.

5. Eva Lee further reported that at approximately 10 pm on that night (Dec 16, 2006) she one again approached John Hom who was now working at the 2nd floor inserting machine, #1 –SLS. Ms. Lee stated that she insisted on speaking to John Hom: "I pulled him off of the machine to speak to him." Lee stated that Hom informed her that he was disappointed at her for disrespecting his wife at the party. Lee responded to Hom by stating she was disappointed at him for discussing the matter with others and not directly with her. Lee reports that at that point both parties agree to leave it at that.

6. Eva Lee stated during this interview that she had no specific recollection of disrespecting the wife of John Hom at any time. Lee stated that at the time of the introduction to Hom's wife she may have been distracted by others or may have been attempting to see who had called her (Eva Lee) cell phone.

7. Mail Room Shaper Eva Lee stated during this interview that she next encounters co-worker John Hom **on December 20, 2006**, at approximately 11:30 am, at the 2nd floor inserting area. Lee stated that Hom stopped her as she was passing by and advised her that if she (Lee) had anything to say they could talk about it after work later that day. Lee replied that she had nothing to say to Hom. At that point in time each went on their way.

8. Lee stated that also on that day, at approximately at 5:15 pm, she was working at a "Com-Stack" machine located at the 2nd floor inserting area. John Hom then approached her and asked a near-by co-worker (Steve Segota) to leave so as to talk to her in private. The co-worker left and John Hom then asked her if they were going to be friends. Lee added that Hom further stated that if they were not going to be friends then he would have to start protecting himself. Ms. Lee advised the undersigned that she did not know what John Hom was implying by the statement he had made to her.

9. At this time Eva Lee advised the undersigned that she also currently has an E.E.O.C. complaint on file regarding the pressroom at the NYP. The undersigned asked Ms. Lee to explain the possible connection between this current mailroom incident and her complaint with the pressroom. Ms. Lee replied that there were some things she could not divulge at this time. Ms. Lee made no further reference to this statement during the course of this interview.

10. Eva Lee continued on regarding the encounters she was experiencing **on December 20, 2006**, with co-worker John Hom while at the NYP plant. Ms. Lee stated that also on this date, while she and John Hom passed each other at the 2nd floor inserting area, near the ladies room, Hom stated the following to Lee: " We are going down together." Lee stated that Hom continued on his way down the

stairs after he made the statement. Lee further reported that Hom then approached her approximately 40 mins later at the 2nd floor inserting area. Hom then stated to Lee the following: " I said something, I regret it, but it cannot be reversed." Eva Lee in turn asked Hom: "What did you say?" Hom replied: "Look, stop and listen to me. They are looking to get you." Lee asked "Who?" Hom continued: "They will be waiting for you at the parking lot." Eva Lee then replied, "The damage is done, I don't care anymore." John Hom then stated: "remember that we had this conversation." At this time both parties went their separate ways. Eva Lee also stated that some co-workers have advised her that John Hom has had disputes with others at the plant. In one particular case reports Lee, Hom held a razor to the neck of another worker at the plant during a dispute. Ms. Lee stated that she does not wish to name the co-worker(s) who provided this information to her because she does not wish to involve them.

11. **On December 21, 2006**, at approximately 7:25 pm Eva Lee reports that both she and John Hom passed each other at the lobby (Hom was leaving the building) and there was no dialogue between them. At 7:45 that same evening, while both were at the shape building located at the front gate, Lee reported the following: Lee stated that she had just signed in on the sign in sheet when she turned and saw John Hom standing immediately in front of her. Lee indicated that Hom was holding his camera phone in his hand, pointing directly at her face as if he were recording her in some way. Lee reported that Hom wanted the "info on Walsh" and also used a phrase towards her: "Sharp Shooter." Ms. Lee explained that the phrase is commonly used to refer to those shapers who shape in more than one different department. Eva Lee could not provide any additional explanation as to the intended meaning of the statements uttered by John Hom towards her. Lee does report that she in turned replied to John Hom in the following manner: " Get your facts straight you moron." She then left the shape building and reported the matter to Mailroom supervisor Joseph Vazzano and the undersigned.

12. During the course of this interview it was determined that shaper John Hom was not present at the Bronx plant for the purposes of interview. John was contacted on this date and requested by the undersigned to be present at the Bronx plant the following day for the purpose of interview regarding this matter. Ms. Lee was also provided a security escort from the building to her private vehicle at the parking lot even though she stated that it was not necessary. During the course of this interview Ms. Lee became visibly upset at times. Lee also indicated that she is now fearful of John Hom based on the remarks he uttered to her.

13. The undersigned informed Ms Lee that the undersigned would continue to look into the matter and directed her to stop interacting with John Hom at the plant unless it was job related. Ms. Lee was further advised that if she felt it was necessary, she could respond to the local police precinct and file a report with them. Ms. Lee replied that she already knew that.

14. On Friday, December 22, 2006, Eva Lee contacted security at the plant and requested to speak to the undersigned. At the lobby of the Bronx plant, Eva Lee reported to the undersigned that she had received an anonymous call to her cell phone by unknown person. Lee further indicated that this was the kind of anonymous call she regularly gets on her cell phone because the caller(s) chose to block their cell number during the call and leave no voice mail. Eva Lee could not provide any further info as to who could be making these calls to her. Ms. Lee stated that she would be contacting her cell phone service company and attempt to get them to identify the callers.

15. On December 27, 2006, security manger Luis Rios, at the direction of the undersigned, inquired with both Mailroom and pressroom supervisors as to any possible new developments regarding these two shapers. Luis Rios was advised that there were no new incidents at this time regarding this matter.

16. On December 29th the undersigned spoke with John Hom via cell phone and inquire if there had been any new encounters or incidents involving he and Eva Lee. John Hom replied that there had not been any.

17. F.Y.I.


Lloyd Vazquez
Security Director

# EXHIBIT B

# *NEW YORK POST*
# *SECURITY DEPARTMENT*

September 14, 2007

FROM:     Jose A. Rivera, Security Manager

TO:       Lloyd Vazquez, Director of Security

Subject:  Mailer/Press Shaper "Eva Lee" Repeated Violation of Shape Procedures

1.  On Friday September 14, 2007 at approximately 2044 hours the undersigned received a call from Director of Security Lloyd Vazquez to respond to the vicinity of the Main Gate, located at the NYP, Bronx plant printing facility.

2.  Lloyd Vazquez reports that at approximately 2040 hours he was exiting the facility when he observed Mailer/Pressroom Shaper "Eva Lee", in violation of the New York Post Shape Procedure. Ms. Lee and a second female (15-17 years old) were in a Silver Toyota Camry parked inside the New York Post facility at the Stop Sign adjacent to the Shape Building and the Main Gate Guard House. The NYP "Shape" procedure requires that all individuals wishing to participate in the "shape" are required to sign-in at the shape building and remain there-in. Shapers can also remain outside of the NYP shape building but can not enter NYP grounds until authorized to do so by a NYP foreman. At the time, Eva Lee was observed inside the NYP parking lot. Mr. Vazquez asked Ms. Lee why she was parked inside the facility. Ms. Lee replied that she was "Shaping". Mr. Vazquez then inquired if she had been notified to shape. Ms. Lee answered that she was not notified. Mr. Vazquez then observed Press Foreman Gus Frangoulis exiting the shape building and requested that he standby and witness the matter. Mr. Vazquez then asked Ms. Lee why she was waiting while parked on site and not in the Shape building as per the Shape procedure. Mr. Vazquez further advised Ms. Lee that this was the second time he had found her to be on site for the purposes of the "Shape" without having authorization to do so. Ms. Lee replied that she was parked on site because she felt it was not safe to wait on the street, on 132St. during the shape. Mr. Vazquez then informed Ms. Lee that there is a Security Guard assigned to the Shape Building, seven days week for the purpose of the shape; thus safety concerns were not warranted. Ms. Lee then stated that other employees are doing the same thing and that he (Lloyd Vazquez) should view the CCTV cameras. Lloyd Vazquez noted that there were no other vehicles and/or persons present within said vicinity, in violation of the Shape procedure at the time. When questioned as to whom the second female in her vehicle was. Ms. Lee responded that it was her daughter but refused to identify her. Ms. Lee then stated that other employees often bring their kids to work.

3. At this time Ms. Lee was refusing to leave the site and wait at the shape room by the front gate. Ms. Lee wanted to remain on site and was becoming argumentative. In order to defuse the matter, Mr. Vazquez then requested and received from Eva Lee her NYP ID card. Ms Lee was advised that she should confer with her supervisor on Monday morning and at that time obtain the ID card once again. Ms. Lee was also informed that she was free to work (shape) any time during the weekend period provided that she obtain a foreman's authorization to work. At that point a temp ID card would be issued to Ms. Lee on a daily basis. Ms. Lee then exited the facility.

4. For your information.

*Jose A. Rivera Jr.*
Jose A. Rivera Jr.
Security Manager